# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CR336 |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS |
| RYAN M. CHALOUX, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Ryan M. Chaloux's (Chaloux) Motion to Suppress. **See** Filing No. 18. Chaloux is charged in the Indictment with possession with the intent to distribute at least 500 grams or more of substances containing cocaine on or about August 25, 2009, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). **See** Filing No. 1. Chaloux seeks to suppress all physical evidence and statements obtained by law enforcement officers as the result of the August 25, 2009, traffic stop involving Chaloux in Saunders County, Nebraska. **See** Filing No. 18.

On January 15, 2010, the court held an evidentiary hearing on the motion. Chaloux was present with his counsel, Julie B. Hansen and Ryan M. Hoffman. Assistant United States Attorney Kimberly C. Bunjer represented the United States. During the hearing, the court received into evidence a video disk of the traffic stop (Ex. 1). The court heard the testimony of Ashland Police Department (APD) Officer Christopher Engel (Officer Engel). A transcript (TR.) of the hearing was filed on January 26, 2010, upon which the motion was deemed submitted. **See** Filing No. 42.

## FINDINGS OF FACT

Officer Engel is a certified law enforcement officer who previously worked with the Kimball County Sheriff's Office and has now been employed with the APD for approximately one year (TR. 3). On August 24, 2009, Officer Engel began his shift for the APD at 9:00 p.m., and was observing traffic, with radar, on Highway 6 located eastbound near Birch Street, just east of the Highway 6 and 66 junction (TR. 4). Officer Engel checked the calibration of the radar system pursuant to APD procedures prior to using the system that evening (TR. 5).

Another officer was parked on Highway 6 facing westbound (TR. 6). At approximately midnight, Officer Engel observed a vehicle approach from behind him and activated the radar system (TR. 6). The radar system indicated the vehicle was traveling at a speed of 54 miles per hour on Highway 6 in an area with a posted speed limit of 45 miles per hour (TR. 6-7). Officer Engel pulled out from where he was parked and followed the vehicle to conduct a traffic stop based on a speeding violation (TR. 7). Officer Engel activated his traffic lights when he came within one hundred feet behind the vehicle (TR. 7). Activation of the traffic lights initiated the video recording device in the police vehicle (TR. 7; Ex. 1). The vehicle stopped, without incident, in the parking lot of a bar (TR. 7). Officer Engel activated the audio recording device manually when he exited his vehicle (TR. 7-8).

Officer Engel made contact with the driver of the vehicle on the driver's side (TR. 8). The driver, Chaloux, was the only occupant in the vehicle (TR. 8). At Officer Engel's request, Chaloux began searching for his driver's license, registration, and insurance (TR. 9). During this search, Officer Engel observed Chaloux to be very nervous with his carotid artery pulsating rapidly and stomach moving up and down rapidly (TR. 9). Officer Engel also observed an air freshener sitting on the dashboard of the vehicle (TR. 9). Officer Engel asked Chaloux to move to the officer's vehicle (TR. 9-10). Officer Engel "found it odd" Chaloux opened the moon roof of the vehicle prior to exiting (TR. 10). Officer Engel asked Chaloux if he had any weapons on him and whether the officer could conduct a pat-down (TR. 10). The driver denied having any weapons and agreed to be frisked (TR. 10). No weapons were found during the pat-down (TR. 10). At that time, Officer Engel and Chaloux sat in the officer's vehicle, which is a truck with a canine's cage, however Officer Engel did not have a service canine with him at that time (TR. 10). Chaloux in the front seat on the passenger side of Officer Engel's truck (TR. 10).

Chaloux presented a Michigan driver's license that identified him as Chaloux (TR. 10). Officer Engel asked Chaloux about his travel itinerary and conducted record checks with the documents presented (TR. 11). Chaloux told Officer Engel that Chaloux left Michigan approximately one and one-half weeks earlier to attend his aunt's wedding in California (TR. 11). Chaloux stated he has been afraid to fly since September, 2001 (TR. 12). Officer Engel noted Chaloux's answers were vague as they discussed various matters (TR. 11). The pair continued to talk about Chaloux's activities in California while they waited approximately ten minutes for the record checks, which took longer than usual (TR. 12). The record checks

revealed Chaloux had a prior drug-related offense (TR. 13). At that time, Officer Engel presented Chaloux with a written warning for speeding and told Chaloux he was free to leave (TR. 13). Chaloux exited the officer's vehicle, but asked additional questions about the warning (TR. 13).

Officer Engel exited the officer's vehicle, and as Chaloux reached the rear of his vehicle, Officer Engel asked Chaloux if he would be willing to answer a few more questions (TR. 14; Ex. 1). Officer Engel and Chaloux returned to the officer's vehicle (TR. 15). In response to questions, Chaloux described his prior criminal history including a drug conviction (TR. 16; Ex. 1). Officer Engel then began to ask Chaloux questions about whether he was transporting illegal drugs or large sums of currency (TR. 15; Ex. 1). Officer Engel observed Chaloux acting nervous, sweating, and noted he appeared to have cotton-mouth (TR. 15). Chaloux admitted he had two thousand dollars, which his aunt had given him for safe travel (TR. 16; Ex. 1).

Officer Engel asked Chaloux for permission to search the vehicle (TR. 17). Chaloux gave verbal permission (TR. 17; Ex. 1). Officer Engel informed Chaloux he was going to retrieve a written consent form for Chaloux (TR. 17). Officer Engel retrieved the form and gave it to Chaloux from outside the passenger door of the officer's vehicle (TR. 18). Officer Engel informed Chaloux that another officer, who was by then present, was going to use a service canine to sniff the exterior of the vehicle (TR. 18). Chaloux appeared to be nervous, and stated that he had some pot in the vehicle (TR. 18; Ex. 1). Officer Engel asked how much and Chaloux responded, "a little less than an eighth" (TR. 18; Ex. 1). Chaloux then began to read the consent form, but looked as if he was having difficulty reading and turned pale (TR. 18). Officer Engel attempted to assist Chaloux in reading the form (TR. 18). Chaloux then stated that he "would rather not sign" the consent form (TR. 18; Ex. 1).

Based on Chaloux's verbal consent to search and admission of possession of illegal drugs, Officer Engel searched the vehicle and found a small amount of marijuana and cocaine in the center console area (TR. 18-19). Officer Engel placed Chaloux under arrest for possession of the cocaine (TR. 19). Officer Engel read Chaloux his *Miranda* rights from a card (TR. 20). Chaloux indicated he understood his rights, and indicated there were no more drugs in the vehicle (TR. 20-21; Ex. 1). Chaloux was then transported to the Saunders County Sheriff's Office by one of the other officers present at the scene (TR 19). Based upon his training and experience, Officer Engel believed the vehicle contained additional amounts of

cocaine (TR. 20). Officer Engel continued searching the vehicle, and ultimately located approximately one kilo of cocaine hidden in the trunk of the vehicle (TR. 19).

## LEGAL ANALYSIS

### A.   Traffic Stop

Chaloux argues Officer Engel did not have legal justification to effectuate a traffic stop of Chaloux's vehicle on August 24, 2009. **See** Filing No. 19 - Brief, p. 2. Specifically, Chaloux contends Officer Engel had neither probable cause nor reasonable suspicion to believe Chaloux was engaged in criminal activity at the time of the stop. For these reasons, Chaloux seeks to suppress any evidence stemming from the August 24, 2009, stop of Chaloux's vehicle.

A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle. *United States v. Arciniega*, 569 F.3d 394, (8th Cir. 2009); **see** *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). There is no dispute Chaloux's vehicle was traveling at 54 miles per hour in a 45 mile per hour zone on Highway 6, as detected by Officer Engel's use of radar. Nebraska law provides, "Any person who operates a vehicle in violation of any maximum speed limit established for any highway or freeway is guilty of a traffic infraction. . . ." **See** Neb. Rev. Stat. § 60-682.01(1).

Officer Engel's radar detection of Chaloux's vehicle traveling at a speed greater than the posted maximum speed limit for Highway 6 in the area around Ashland, Nebraska, provided Officer Engel with probable cause to believe Chaloux was guilty of a traffic infraction. Accordingly, Officer Engel's observation provided him with probable cause to stop Chaloux's vehicle based on a violation of Neb. Rev. Stat. § 60-682.01(1).

### B.   Detention

Chaloux argues Officer Engel violated Chaloux's Fourth Amendment rights by prolonging his detention beyond the time reasonably required to issue a citation or warning. **See** Filing No. 19 - Brief, p. 3. The court finds, however, that Chaloux's detention was constitutionally reasonable. Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting**

4

*United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). In fact, a police officer may detain the occupants while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

The police officer may also inquire about the driver and other occupant's destination, purpose of the trip and whether the police officer may search the vehicle. *United States v. Gill*, 513 F.3d 836, 845 (8th Cir. 2008). "If the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry to satisfy those suspicions." *United States v. Ward*, 484 F.3d 1059, 1061 (8th Cir. 2007) (**quoting** *United States v. Johnson*, 58 F.3d 356, 357 (8th Cir. 1995)).

In any event, the scope and length of any investigation must be reasonable. *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008). "The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Ward*, 484 F.3d 1059, 1062 (8th Cir. 2007) (**quoting** *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir.1994) (en banc)).

Chaloux relies on *Peralez* to argue it is violative of the Fourth Amendment for police officers to ask non-routine questions to extend a traffic stop "beyond the time reasonably required" to complete its purpose. *Peralez*, 526 F.3d at 1121. However, the current case is distinguishable from *Peralez*. In *Peralez*, the investigating trooper utilized a "blended process" of investigating the stop and asking drug interdiction questions. *Id.* at 1120. However, the trooper told the driver he would issue only a warning ticket approximately three minutes into the sixteen-minute traffic stop. *Id.* at 1119. Hence, the *Peralez* court found the inclusion of the trooper's drug interdiction questions, after deciding to issue a warning, more than doubled the time of the detention. *Id.* at 1121. *Peralez* did not involve independent justification for prolonging the traffic stop such as reasonable suspicion of other criminal activity or consent. *Id.*

Here, the length of the traffic stop was directly related to Officer Engel's performance of routine tasks. Upon receiving Chaloux's identification, Officer Engel conducted checks on Chaloux's driving record and criminal history. Officer Engel also asked questions about Chaloux's travel plans. Chaloux's unusual answers regarding his travel plans, together with

Officer Engel's observations, raised Officer Engel's suspicions that Chaloux was engaged in criminal activity, but at no point did Officer Engel extend Chaloux's detention beyond the time reasonably required to issue a citation or warning.  Although it took longer than usual for Officer Engel to receive information regarding Chaloux's record checks, once Officer Engel received the information requested, he promptly issued Chaloux a written warning.  Any additional time beyond that normally required to receive the information regarding Chaloux's record checks were reasonably related to the initial traffic stop, and did not prolong the traffic stop in violation of Chaloux's Fourth Amendment rights.

Even without reasonable suspicion, an officer may ask questions unrelated to the traffic stop during a post-stop consensual encounter.  *United States v. Esquivel*, 507 F.3d 1154, 1159 (8th Cir. 2007).  After returning the paperwork and indicating Chaloux would only receive a written warning for speeding, Officer Engel informed Chaloux he was "free to go" and allowed Chaloux to exit the police vehicle and continue on his way  (TR. 13; Ex. 1).  Before Chaloux entered his vehicle, however, Officer Engel asked if Chaloux would be willing to answer some more questions (TR. 14; Ex. 1).  Chaloux agreed, and proceeded to reenter Officer Engel's police vehicle (TR. 15; Ex. 1).  At that time Officer Engel asked Chaloux additional questions, including questions about carrying contraband, and requested permission to search.  Therefore, the court finds Chaloux had been informed that he was free to leave, and the initial post-stop questions posed by Officer Engel took place during a consensual encounter with Chaloux.

**C.   Search**

Chaloux contends the search of the vehicle he was driving violated his Fourth Amendment rights because Officer Engel had neither a warrant nor probable cause to justify the search.  See Filing No. 19 - Brief, p. 6.  The Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  *U.S. Const. amend. IV*; **see** *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003) (Fourth Amendment applies to the states through the Fourteenth Amendment.).  "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion."  *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005).  Consent may be withdrawn, however, "but only by an unequivocal act or statement."  *United*

*States v. McMullin*, 576 F.3d 810, 818 (8th Cir. 2009) (**quoting** *United States v. Gray*, 369 F.3d 1024, 1026 (8th Cir. 2004)) (internal marks omitted).

"Police may search a car without a warrant if they have probable cause to believe that the car contains contraband or evidence." *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1994) (**quoting** *United States v. Payne*, 119 F.3d 637, 642 (8th Cir. 1997)). Additionally, probable cause to search exists when a suspect admits to possessing narcotics. *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999).

During Chaloux's consensual, post-stop discussion with Officer Engel, Chaloux consented to a search of his vehicle by Officer Engel (TR. 17; Ex. 1). Officer Engel then gave Chaloux a written consent form and asked him to fill it out in addition to giving verbal consent to search. Before completing the consent form, however, Chaloux withdrew his verbal consent by refusing to sign the form and stating that he "would rather not sign" (TR. 18; Ex. 1). Chaloux revoked his consent to search only **after** Chaloux stated he had marijuana in the vehicle. Chaloux's statement, together with Officer Engel's observations of Chaloux's nervousness, sweating, pulsating carotid artery, the presence of an air freshener on the dash, Chaloux's opening of the vehicle's moon roof prior to exiting, and his prior history of a drug-related conviction, provided Officer Engel with probable cause to believe the vehicle contained contraband, and justified Officer Engel's subsequent search of the vehicle. Thus, Officer Engel's search of Chaloux's vehicle did not violate Chaloux's Fourth Amendment rights.

D.   **Derivative Evidence**

Chaloux argues that if the court finds Officer Engel did not have probable cause to stop or search Chaloux's vehicle, then any evidence obtained from the subsequent search of the phone and GPS that were seized from the vehicle Chaloux was driving, should be suppressed as the fruit of an illegal search under *Wong Sun v. United States*, 371 U.S. 471 (1963). **See** Filing No. 19 - Brief, p. 7. As indicated above, the court finds Officer Engel did have probable cause to stop and search the vehicle Chaloux was driving. All of the evidence collected from the vehicle was the fruit of a valid traffic stop and legal search. Thus, the evidence asserted to be suppressed as the fruit of an illegal search should not be suppressed under *Wong Sun*.

Officer Engel did not violate Chaloux's rights under the Fourth Amendment to the United States Constitution. Therefore, the motion to suppress the evidence collected as a result of the August 24, 2009, traffic stop should be denied. Upon consideration,

**IT IS RECOMMENDED TO SENIOR JUDGE LYLE E. STROM that:**

Ryan M. Chaloux's Motion to Suppress (Filing No. 18) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to these Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of these Findings and Recommendations. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 5th day of March, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.